# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES A. MITCHEM, individually and<br>on behalf of a class of similarly situated persons, | ) | |
| | ) | 09 C 6711 |
| Plaintiff, | ) | |
| | ) | Judge Norgle |
| v. | ) | |
| | ) | |
| NORTHSTAR LOCATION SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF CURTIS C. WARNER**

I, Curtis C. Warner declare that the following statements are true:

1.      I received my undergraduate degree from Grand Valley State University in 1993, my Masters Degree in Education from Wayne State University in 1998, and my Juris Doctorate from Michigan State University – Detroit College of Law (now Michigan State University – College of Law), *cum laude*, in 2002.  During law school, I was the Editor-in-Chief for the Michigan State University – Detroit College of Law *Journal of Medicine and Law* and interned with the United States Army Judge Advocate General's Office at Fort Carson in Colorado.

2.      In August 2002, I began working as an associate attorney at Collins & Blaha, P.C., an employment law firm that represents various school districts in the State of Michigan.

3.      In April 2003, I worked as a staff attorney at Michigan Migrant Legal Assistance Project, Inc., representing migrant farm workers in various labor and consumer disputes before administrative agencies and federal and state courts.  During that time I represented a client before the Michigan Supreme Court.  *Lopez v. Hardy's Holsteins LLC,* 2005 MIWCLR (LRP) LEXIS 151 (Mich. WCAC, June 24, 2005) *sub nom. Lopez v. Worker's Compensation Appellate Comm'n.,* No.

263842, 2005 Mich. App. LEXIS 3312 (Mich. App., Sept. 23, 2005); 704 N.W. 2d 709, 474 Mich. 893 (Mich. 2005).

4.      While working at Michigan Migrant Legal Assistance Project, Inc., I served as an associate member on the State Bar's Committee on Legal Aid, was a member of the Michigan Pesticide Action Committee, and participated in committee meetings with state legislators and other members of the state bar focusing on passing legislation to end the unlicensed practice of law by "notarios."

5.      From March 2005 to September 2006, I was an associate attorney at the consumer class action law firm of Edelman Combs Latturner & Goodwin LLC in Chicago, Illinois ("Edelman Combs").  While at Edelman Combs, I was primarily responsible for the prosecution of consumer class actions brought under the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Illinois Consumer Fraud Act ("ICFA") and the Illinois Security Deposit Act.

6.      In October 2006, I started Warner Law Firm, LLC, and am the principal member of the firm that represents consumers in the federal courts of Illinois, Michigan, Indiana and in the Circuit Court for Cook County, Illinois and other outlying county circuit courts.  The firm has also represented a consumer in a Michigan state district court.

7.      I am a member of both the Michigan (Admitted 2002) and Illinois (Admitted 2004) bars and am admitted to practice before the following Courts: Seventh Circuit Court of Appeals, Sixth Circuit Court of Appeals, Northern District of Illinois, Central District of Illinois, Southern District of Illinois, Eastern District of Michigan, Western District of Michigan, Northern District of Indiana and the Southern District of Indiana.  I have also been permitted to practice *pro hac vice* in the Eastern District of Virginia and Monterey County, California.

8.      I am a member of the Trial Bar of the Northern District of Illinois, having twice served the Court as appointed counsel in a Title VII and a bank financing case and have performed *pro bono* work the Legal Aid Foundation of Metropolitan Chicago.  I am a member of the National Association of Consumer Advocates.

9.      Since its founding in 2006, Warner Law Firm, LLC and Curtis C. Warner have been approved as class counsel in the following matters:  *Mitchem v. Northstar Location Services,* LLC, 09 C 6711, Dkt. 23, Preliminary Approval Order (N.D. Ill. Feb. 5, 2010); *Kern v. LVNV Funding, Inc.*, 09 C 2202, (N.D. Ill. Jan. 21, 2010); *Hosenkamp v. Weltman, Weinberg & Reis, Co. of Michigan*, Case No. 1:09-cv-10613-TLL-CEB, 2010 U.S. Dist. LEXIS 3667, Preliminary Approval Order, (E.D. Mich. Jan. 19, 2010);  *Prieto et al. v. HBLC, Inc. and Steven J. Fink & Assoc., P.C.*, 08 C 2817 (N.D. Ill. Dec. 15, 2008);  *Dobson v. Asset Acceptance LLC*, 07 C 6203, (assigned as related to 07 C 5967) (N.D. Ill. 2008);  *Horton v. IQ Telecom*, 07 C 2478 (N.D. Ill. May 5, 2008).

10.      In *Cavin v. Home Loan Center, Inc.* 236 F.R.D 387 (N.D. Ill. 2007), a specific finding regarding my ability as class counsel was made in that, "The Court finds that Mr. Warner [is]. . . 'experienced, competent, qualified and able to conduct the litigation vigorously'", and therefore met the adequacy of class counsel requirement under Rule 23(a)(4)).  *Id.* at 395.

11.      I have experience as the primary attorney prosecuting, or was materially involved at some point in the litigation of the following consumer matters that were certified as a class action or were settled on a class basis while at Edelman Combs:  *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006); *Larson v. Capital One Auto Finance*, Inc. 06 C 1174, 2007 U.S. Dist. LEXIS 15620 (N.D. Ill. March 5, 2007); *Thomas v. Capital One Auto Finance, Inc.*, 06 C 643, 2006 U.S. Dist. LEXIS 81358 (N.D. Ill. Oct. 24, 2006);  *Kudlicki v. Capital One Auto Finance, Inc.*, 06 C 1918, 2006 U.S. Dist. LEXIS 81103 (N.D. Ill. Nov. 2, 2006);  *Pavone v. Aegis Lending Corp.,* 05 C

5129, 2006 U.S. Dist. LEXIS 62157 (N.D. Ill. Aug. 31, 2006); *Thomas v. Arrow Financial Services, LLC*, 05 C 5699, (N.D. Ill.) ($500 or 20% of the outstanding debt, whichever is less, to his or her outstanding debt; $100 or a *pro rata* share of $50,000 whichever is less class settlement established. Settled in principal on class basis prior to my departure from Edelman Combs); *Holt v. Wells Fargo Financial Acceptance America, Inc.*, 06 C 1949 (N.D. Ill) combined with *Perez v. Z Frank LLC,* 06 C 45 (N.D. Ill.) ($438,200 class settlement fund established. Settled in principal on class basis prior to my departure from Edelman Combs); *Smith v. Rockenbach Chevrolet Sales, Inc.* 05 C 5454 (N.D. Ill.) ($116,841.24 settlement fund established); *Cavin v. Bill Jacobs Joliet, L.L.C.,* 05 C 5025 (N.D. Ill.) ($96,658.72 class settlement fund established. Settled in principal with Defendant Consumer Portfolio Services on a class basis prior to my departure from Edelman Combs); *Miller v. Ocwen Federal Bank FSB*, 05 C 308 (N.D. Ill.) ($100,000 class settlement fund established); *Asher v. Van Ru Credit Corp.,* 04 C 5947 (N.D. Ill) ($40,000 class settlement fund established); *Thruman v. National Financial Systems, Inc.* 1:05-cv-00315-WLT-JDT (S.D. Ind.) ($6,400 class settlement fund established); *Hale v. East Lake Development & Mgt.*, 2000 CH 16139 (Cook County, Illinois) ($436,875 settlement fund established for two classes); *Fox v. Marquette Management, Inc.* 2002 CH 12449 (Cook County, Illinois) ($150,000 class settlement fund established.

12.     Additionally, I was the primary brief writer on behalf of the plaintiff in the following cases: *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852 (7th Cir. 2009); *Phinn v. Capital One Finance, Inc.*, 502 F. Supp. 2d 625 (E.D. Mich. 2007); *Cavin v. Home Loan Center, Inc.,* 236 F.R.D. 387 (N.D. Ill. 2006); *Hendricks v. DSW Shoe Warehouse, Inc.,* 444 F. Supp. 2d 775 (W.D. Mich. 2006); *Peralta v. Accept Acceptance, LLC*, 1:07-cv-1270, 2009 U.S. Dist. LEXIS 18195 (W.D. Mich. March 10, 2009); *Glover v. Mary Jane M. Elliot, P.C.*, Case No. 1:07-cv-648, 2007 U.S. Dist. LEXIS 73605 (W.D. Mich. Oct. 2, 2007); *Chavez v. Bowman, Heintz, Bocia*

& *Vician*, 07 C 670, 2007 U.S. Dist. LEXIS 61936 (N.D. Ill. Aug. 22, 2007); *Cunningham v. Van Ru Credit Corp.*, 06 C 1042, 2006 WL 3289775 (E.D Mich. Nov. 12, 2006); *Kudlicki v. Capital One Auto Finance,* 06 C 1918, 2006 WL 3210492 (N.D. Ill. Nov. 2, 2006); *Johnston v. Arrow Financial Services, LLC.,* 06 C 13, 2006 WL 2710662 (N.D. Ill. Sept. 15, 2006); *Pavone v. Aegis Lending Corp.,* 05 C 5129, 2006 WL 2536632 (N.D. Ill. Aug. 31, 2006); *Cunningham v. Van Ru Credit Corp.,* 06 C 1042, 2006 WL 2056576 (E.D. Mich. July 21, 2006); *Richardson v. DSW Inc.,* 05 C 4599, 2006 WL 163167 (N.D. Ill. Jan. 18, 2006); *Richardson v. DSW Inc.*, 05 C 4599, 2005 WL 2978755 (N.D. Ill. Nov. 3, 2005); *Lopez v. Hardy's Holsteins LLC,* 2005 MIWCLR (LRP) LEXIS 151 (Mich. WCAC, June 24, 2005) *sub nom. Lopez v. Worker's Compensation Appellate Comm'n.,* No. 263842, 2005 Mich. App. LEXIS 3312 (Mich. App. Sept. 23, 2005); 704 N.W. 2d 709, 474 Mich. 893 (Mich. 2005).

13.     Since forming Warner Law Firm, LLC, I have filed over 50 cases on behalf of consumers throughout the federal district courts of Illinois, Michigan and Indiana and have represented clients' interest before the Seventh and the Sixth Circuit Court of Appeals.  Since beginning the practice of law, I have been involved in the litigation of over 100 cases on behalf of consumers in the courts to which I am admitted.

14.     Warner Law Firm, LLC also defends consumers in state court proceedings filed by their alleged creditors and/or assignees.  As of August 1, 2009, in such state court cases Warner Law Firm, LLC charges and has been paid for my services at an hourly rate of $305 per hour.  As the Seventh Circuit has stated, "the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it is market value." *Balcor Real Estate Holdings, Inc.. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

15.     The $305 hourly rate already takes into consideration the of the area of law, by way

of example, a more complex legal matter such as corporate bankruptcy can command an hourly rate

of $1,100. ABA Journal, Kirkland & Ellis Seeks Fee of $18.50 a Minute for Bankruptcy Work (Jan.

28, 2009) *available at* http://www.abajournal.com/news/kirkland_ellis_seeks_fee_

of_18.50_a_minute_for_bankruptcy_work. (last visited Dec. 23, 2009).

16.     Further supporting my hourly rate is awards in similar matters:

        a.      In *Kern v. LVNV Funding, Inc.*, 09 C 2202, (N.D. Ill. Jan. 21, 2010), an FDCPA case

that was settled on a class basis, I expended $6,408.50 in attorney's fees at a $285, $305 post August 1,

2009, hourly billing rate and $380.76 in costs.  The court approved of the hourly rates sought and

approximately a 1.6 multiplier in awarding $10,862.50 in attorney's fees and costs.  A transcript of the final

approval hearing and final approval order are attached hereto as Appendix 1.

        b.      In *Sterling v. Blatt Hasenmiller, Liebsker & Moore, LLC*, 09 C 1288, Dkt. 15, Order

of Judgment, (N.D. Ill. Apr. 23, 2009), an individual case brought under the FDPCA, the court approved my

rate at $300 per hour.  A copy of the Order is attached hereto as Appendix 2.

17.     However, depending on how the district court views the complexity of the case and the

number of attorneys involved, such as four, a reduction in Mr. Warner's rate has been upheld to unspecified

amount so long as the ultimate reasons for the total amount of the award to all counsel is apparent on the

record.  *Schlacher v. Law Office of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852 (7th Cir. 2009)

*rehearing denied by* 2009 U.S. App. LEXIS 22080 (7th Cir. Sept. 28, 2009); *Jerman v. Carlisle, McNellie,*

*Rini, Kramer & Ulrich LPA*, 2010 U.S. LEXIS 3840 * 48, - - U.S. - - (April 21, 2010) (*quoting Schlacher*,

574 F.3d at 854-55) (a downward adjustment to the loadstar was affirmed by the Seventh Circuit where

existed the "unnecessary use of multiple attorneys . . . in a straightforward, short-lived [FDCPA] case.").

18.     In *Benford v. Ranieri et al.*, 08 C 917, oral hearing on motion for attorney's fees and

costs (N.D. Ill. July 1, 2008), a copy of the pertinent part is attached as Appendix 3, Judge Kennelly

approved me at an hourly rate of $260 for work beginning in 2007, specifically finding that, "the

hourly rates are based on what has been submitted and my knowledge of fees in this field [FDCPA cases]. They are reasonable and, frankly, in some situations a little bit more than reasonable." (Id. at pp. 24-25).

19.     A billing rate of $305 for paying clients as of August 2009 is reasonable for an FDCPA attorney in the Chicago area admitted to the bar in 2002 in light that the market rate for the defense of a Fair Debt Collection Practices Act for an associate admitted to the Illinois bar in 2001, https://www.iardc.org/ldetail.asp?id=415932357, was $300 per hour in 2007, which was the case in the *Benford* matter, *supra*. Appendix 4 (Williams Montgomery & John Ltd., Associate, Robert M. McCann).

20.     A 2009 billing rate of $305 for a consumer attorney in the Chicago area admitted to the bar in 2002 is reasonable in light of the following awards issued by courts to attorneys who where either a solo practitioner or were in an office of two attorneys. In *Catalan v. RBC Mortg. Co.,* 05 C 6920, 2009 U.S. Dist. LEXIS 84339 * 40 (N.D. Ill. Sept. 16, 2009) the court approved Keith Keogh's hourly rate at $340 per hour for litigation that began in 2005. Mr. Keogh was admitted in Illinois in 1999, https://www.iardc.org/ldetail.asp?id=196451426.

21.     Based upon my knowledge of the Chicago market the $305 per hour billing rate for an attorney seven years out of law school is comparable with the rates charged by other attorney's of similar experience. *See O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 838-39 (N.D. Ill. 2007) ("The December 11, 2006 issue of the National Law Journal gives a sampling of hourly rates charged by Chicago and other law firms for fourth year associates. The firms range from Jenner and Block (with 467 lawyers in Chicago) to Brinks, Hofer, Gilson & Leone (with 151 lawyers). The fourth year associates at the latter were billed at $ 285 an hour in 2006, while at Jenner, the rates were from $ 325 to $ 330. Neal Gerber & Eisenberg (with 170 lawyers) charged $ 300 per hour for

its fourth year associates."); *See also Natat'l Foreign Trade Council, Inc. v. Giannoulias*, 2007 U.S. Dist. LEXIS 66618 * 7 (N.D. Ill. Sept. 7, 2007) (approving junior associate hourly rate of $260, $320 for A. Pearce, admitted in 2004, https://www.iardc.org/ldetail.asp?id=446597219).

22.    Chicago Attorney Michelle Weinberg an attorney at the Legal Aid Foundation of Metropolitan Chicago, agrees that a billing rate of $285 for my legal services as of August 2008 was reasonable in the Chicago market.   Appendix 5.

23.    For this case, I kept track of my time and case costs on a contemporaneous basis by using time notes.  A copy of my attorney time and case costs is attached hereto as Appendix 6.

I Curtis C. Warner declare under penalty of perjury that the foregoing is true and correct. Executed on APRIL 30, 2010.

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner          cwarner@warnerlawllc.com
WARNER LAW FIRM, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(312) 238-9820 (TEL)

# APPENDIX 1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3    VERA KERN, et al.,              )  No. 09 C 2202
                                     )
4                    Plaintiffs,     )  Chicago, Illinois
                                     )  January 21, 2010
5                                    )  9:00 o'clock a.m.
     -vs-                            )
6                                    )
                                     )
7    LVNV FUNDING LLC,               )
                                     )
8                    Defendant.      )

9
          TRANSCRIPT OF PROCEEDINGS - STATUS
10      BEFORE THE HONORABLE WAYNE R. ANDERSEN

11   APPEARANCES:

12   For the Plaintiffs:      WARNER LAW FIRM, LLC
                              155 North Michigan Avenue
13                            Suite 560
                              Chicago, Illinois 60601
14                            BY:  MR. CURTIS C. WARNER

15   For the Defendant:       BARHORST & ASSOCIATES, P.C.
                              901 West Jackson Boulevard
16                            Suite 301
                              Chicago, Illinois 60607
17                            BY:  MS. STACIE E. BARHORST

18

19

20

21

22

23   Court Reporter:          ROSEMARY SCARPELLI
                              219 South Dearborn Street
24                            Room 1412
                              Chicago, Illinois  60604
25                            (312) 435-5815

1          THE CLERK:  Case No. 9 C 2202, Kern versus LVNV
2    Funding.
3          MS. BARHORST:  Good morning, your Honor, Stacie
4    Barhorst on behalf of LVNV Funding.
5          MR. WARNER:  Good morning, your Honor, Curtis
6    Warner on behalf of plaintiff and the class.  We are up today
7    for final approval of a class action settlement here.
8          THE COURT:  Is there anybody else here on this?
9          Why don't you describe the settlement for me.
10         MR. WARNER:  The settlement agreement -- the
11   settlement class involves 80 individuals who were each
12   credited $550.00 in credit, for a total 43,400 --
13         THE COURT:  How is that credit going to work?
14         MR. WARNER:  It is amounts that the consumers are
15   alleged to owe to LVNV Funding.
16         THE COURT:  How are they going to get the credit?
17         MR. WARNER:  The credit is going to be
18   automatically added to their account.  So if they had a
19   balance of a thousand dollars, then 550 will be subtracted,
20   leaving $450.00 as the amount outstanding, which LVNV would
21   attempt to collect.
22         THE COURT:  And there were a couple people that
23   paid.  They are going to get 250 bucks each?
24         MR. WARNER:  Yes, your Honor, there is two
25   individuals that paid.  And we notified the Court that those

1   monies could be a potential cypres award if they do not cash

2   their checks within the time period.

3           THE COURT:  So we are talking about there like one

4   or 2,000 maximum?

5           How much money might there be in the cypres?

6           MR. WARNER:  It would be $500.00.

7           THE COURT:  $500.00.

8           MR. WARNER:  Yes.

9           THE COURT:  So do we think -- do we really think

10  they won't cash their checks?

11          MR. WARNER:  If I was given a $250.00 check, your

12  Honor, I would can cash it right away.

13          THE COURT:  Probably.

14          So I will tell you what, if they don't cash their

15  checks, I would suggest you send it to a homeless shelter,

16  Interfaith House, on the west side that is terrific.  And

17  that is not going to make or break their week, but it could

18  their day because they are really -- is that all right?

19          MR. WARNER:  That is -- that is what we agreed to,

20  your Honor, is for you to set the cypres.

21          THE COURT:  Okay.

22          MR. WARNER:  We have also put it -- we have a final

23  approval order with the dates filled in.  We will file with

24  the Court a letter regarding the cypres in Paragraph 9, and

25  then we will then make the distribute -- distribute those

1   funds.

2          THE COURT:  And the defendant is paying your fees?

3          MR. WARNER:  That is -- that is correct.

4          THE COURT:  And I have to credit you with, you

5   know, apparently not wasting a lot of time here.  You know, I

6   thought that was a very reasonable fee for the effort.

7          So thanks.

8          MR. WARNER:  Thank you, your Honor.

9          THE COURT:  All right.  I signed the order.

10          MR. WARNER:  All right.  Thank you.

11          MS. BARHORST:  Thank you.

12      (Which were all the proceedings heard.)

13                     CERTIFICATE

14      I certify that the foregoing is a correct transcript

15   from the record of proceedings in the above-entitled matter.

16

17   s/Rosemary Scarpelli/        Date:  February 12, 2010

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VERA KERN, individually and
on behalf of a class of similarly situated persons,

                                          09 C 2202

                    Plaintiffs,

    v.

                                      Judge Andersen

LVNV FUNDING, LLC,

                    Defendant.

## FINAL APPROVAL ORDER

1.      On October 1, 2009, this Court preliminarily approved the Class Settlement Agreement reached between Plaintiff Vera Kern ("Plaintiff") and Defendant LVNV Funding, LLC ("Defendant"). The Court approved a form of notice for mailing to the class. The Court is informed that actual notice was sent to approximately 80 class members (counting couples and other joint persons as a single class member). A total of 13 envelopes were returned by the United States Postal Service marked not deliverable with no forwarding addresses available, and 0 envelopes were returned and re-mailed to a forwarding address. Zero class members requested exclusion and the Court making a finding that one letter received by Plaintiff's counsel does not qualify for an objection and therefore the Court is apprised and makes a finding that Zero objections were filed or received.

2.      On January 21, 2010, the Court held a fairness hearing to which class members, including any with objections, were invited. The Court, being fully advised in the premises, hereby ORDERS:

3.      The Court finds that the provisions for notice to the class satisfy the requirements of Fed. R. Civ. P. 23 and due process.

1414944v1

4. The Court finds that the settlement is fair and reasonable, and hereby approves the

Class Settlement Agreement submitted by the parties, including the release and the following

terms:

(a) Defendant agrees to close the account it sued Plaintiff upon and agrees to refrain from selling it. If Defendant reported said account to consumer reporting agencies, it agrees to effectuate a request for the deletion of its tradelines if any and if not already completed;

(b) Defendant shall pay Plaintiff $1,000 in settlement of her individual claims for statutory and actual damages;

(c) Each class member not opting out, who, as of the date of this agreement and according to Defendant's records, owed a balance on an account owned by Defendant where a lawsuit was filed by or on behalf of Defendant, as described in paragraph 9 above, shall be provided a $550.00 credit of their account balance. Defendant estimates that the value of these credits is $43,450.00.
— of the settlement agreement

(d) Defendant's records indicate that no class member as of the date of this agreement has paid off their account in full. If a class member not opting out pays off the balance of their account after the signing of this agreement and before the date Defendant is required to apply the credit of $550.00 to the class member's account, that class member will be sent a check for $250.00;

(e) Defendant shall pay Plaintiff's costs, expenses and reasonable attorney fees. Subject to the court's approval, Defendant will pay Plaintiff's counsel $10,862.50 in attorney's fees and costs, which represents 25% of the amount recovered by the class. This amount is in addition to the amounts to be paid to Plaintiff and credited to the Class; and

(f) All payments and/or reductions referred to above will be made within thirty (30) days of the Effective Date; and

5. Plaintiff and the members of the class grant Defendant the following release:

(A) Plaintiff and each class member not opting out as of the Effective Date of

this Agreement hereby remise, release and forever discharge Defendant and its present or former

partners, attorneys, members, principals, insurers, parents, officers, directors, representatives,

employees, agents, servants, predecessors, successors, subsidiaries, affiliates, related entities,

shareholders, heirs, executors, administrators, and assigns (hereinafter collectively "RELEASED

PARTIES") of and from all causes of action, suits, claims, demands, liabilities, judgments, debts, charges, and damages including any indemnity claims for payment of attorney's fees and costs, that were made or which could have been made, in law or equity, for anything of any kind or nature whatsoever, known or unknown at this time, up through and including the date the Court sets for the class members to opt out or object to this settlement, by Plaintiff on behalf of herself or on behalf of the above-defined class in the lawsuit filed in the United States District Court for the Northern District of Illinois entitled *Vera Kern., individually and on behalf of a class of similarly situated persons v. LVNV FUNDING, LLC*, Case No. 09 C 2202. Plaintiff and each class member retains all defenses in regard to the debts they were sued upon.

(B) Except for the credits described in paragraph 10(c) above, nothing herein shall prevent Plaintiff or the Class from asserting any defenses with respect to the underlying debts that Defendant was allegedly attempting to collect.

(C) The release is conditioned upon the approval of the Agreement by the Court and Defendant meeting its obligations herein.

(D) Defendant does not release its claims against any class member for the payment of the debt. Except for the provisions in paragraph 10, the accounts of the class members are not affected by this Agreement. This Agreement does not prevent Defendant from collecting class member accounts or placing class member accounts for collection, nor is any defense or set-off waived except the specific claims released.

6. The Court finds the Settlement Agreement fair and made in good faith.

7. The Court dismisses the claims of Plaintiff and the class against Defendant and the Released Parties with prejudice and without costs (other than what has been provided for in the Settlement Agreement).

1414944v1

8.      The Court awards attorney's fees and costs in the total amount of $10,862.50, to Warner Law Firm, LLC.

9.      The parties are to file a letter with the Clerk of the Court advising the Court whether any monies due to the two class members who paid their accounts in full are to be distributed as a *cy pres* award.

10.     The Court retains jurisdiction over the interpretation, enforcement and implementation of the Settlement Agreement and of this Order.

DATE: *January 21, 2010*

The Honorable Wayne R. Andersen
United States District Court Judge

# APPENDIX 2



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

YASHA L. STERLING,                )
                                  )      09 C 1288
                 Plaintiff,       )
                                  )      Judge Lefkow
                                  )
        v.                        )
                                  )
BLATT, HASENMILLER, LIEBSKER      )
& MOORE, LLC,                     )
                                  )
                 Defendant.       )

## <u>ORDER OF JUDGMENT</u>

Based on the acceptance by Plaintiff Yasha L. Sterling of the Fed. R. Civ. P. ("Rule") 68 Offer of Judgment made by Defendant Blatt, Hasenmiller, Liebsker & Moore, LLC, **IT IS HEREBY ORDERED**:

1.      Judgment is entered in favor of Yasha L. Sterling and against Defendant Blatt, Hasenmiller, Liebsker & Moore, LLC in the amount of $2,500 as her statutory and actual damages;

2.      In accordance with the Defendant's Rule 68 Offer of Judgment, Plaintiff is entitled to an award of a reasonable attorney's fee and costs to be determined by this Court;

4.      The Court has been informed that the Plaintiff's counsel has presented Defendant's counsel materials in support if a reasonable attorney's fee and costs pursuant to Local Rule 54.3 seeking $2,670 in attorney's fees for 8.9 hours at $300 per hour and $410 in costs.  The Court has been informed that Defendant does not object to Plaintiff's request for a reasonable attorney's fee and costs above;

5.      Judgment is entered in favor of Yasha L. Sterling and against Defendant Blatt, Hasenmiller, Liebsker & Moore, LLC for a reasonable attorney's fee in the amount of $2,670 for 8.9 hours at $300 per hour and $410 in costs pursuant to 15 U.S.C. § 1692k(a)(3);

     6.     Defendant's motion for a second extension of time to answer Plaintiff's Complaint is

denied as moot; and

     7.     The April 23, 2009, initial status date and presentment of Defendant's motion is stricken.


ENTERED: _Joan H. Lefkow_
Honorable Joan Humphrey Lefkow
United States District Court Judge


DATE:     4-23-09

# APPENDIX 3

1
2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3

4   JOFFREY BENFORD,                    )

5                    Plaintiff,        )  Docket No. 08 C 917

6              vs.                      )

7   CHRISTOPHER A. RANIERI, et          )  Chicago, Illinois
    al.,                                )  July 1, 2008
8                    Defendants.        )  10:00 a.m.

9

10                  TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MATTHEW F. KENNELLY

11

12  APPEARANCES:

13
    For the Plaintiff:     CHICAGO LEGAL CLINIC
14                            BY:  MS. LAURA K. BAUTISTA
                            205 W. Monroe, 4th Floor
15                          Chicago, Illinois  60606

16
    For the Defendant:    WILDMAN, HARROLD, ALLEN & DIXON
17                            BY:  MR. ROBERT M. MC CANN
                            225 West Wacker Drive, Suite 3000
18                          Chicago, Illinois  60606

19

20

21

22

23
              LAURA M. BRENNAN - Official Court Reporter
24            219 South Dearborn Street - Room 2102
                    Chicago, Illinois  60604
25                      (312) 427-4393

1    Mr. Ranieri and his law firm ought to get charged with both

2    sides of that equation.

3         So what I'm going to eliminate again from Mr. -- I'm

4    not going to eliminate Ms. Bautista's time.  What I'm going to

5    eliminate from Mr. Warner's time are the entries for the

6    following dates relating to the conferences with Ms. Bautista,

7    and those dates are April 21, 0.3 hours; April 23rd -- excuse

8    me -- yes, April 23rd, 0.3 hours; and May 1st, 0 -- actually I

9    already eliminated that.  So that's not -- I can't eliminate

10   it twice.  So that takes off another 0.6 hours for

11   Mr. Warner's time, and at a rate of $260 an hour, that is

12   $156.  So his time then gets reduced to $4,243.

13        On Ms. Bautista, it looks to me -- you know, if I

14   look at the entry for -- the corresponding entry for

15   Mr. Warner for May the 1st, it looks like to me that the

16   discussion on May the 1st largely, if not entirely, regarded

17   -- concerned another defendant; so I'm going to eliminate that

18   0.2 hours.  So Ms. Bautista's time is actually 1.5 as opposed

19   to 1.7 hours.

20        So the total for her is -- give me a second here --

21   I'm doing the math wrong -- $285.  So these are the final

22   numbers.

23        First of all, I find that the hourly rates are

24   reasonable based on what has been submitted and my knowledge

25   of fees in this field.  They are reasonable and, frankly, in

1    some situations a little bit more than reasonable.  The

2    reasonable time spent by Mr. Warner, again, would be

3    16.1 hours.  I have to make sure I'm doing that right.

4        (Brief interruption.)

5        THE COURT:  I botched that.  I believe that is

6    correct.  16.1 hours.  The reasonable time for Ms. Bautista is

7    1.5 hours.  And the total amount that I am awarding is $4,243

8    for Mr. Warner, $1,140 for Ms. Bautista.  So the total of the

9    attorney's fees component is 5,086.

10       MR. MC CANN:  That was the initial claim or was that

11   the reduced amount?

12       THE COURT:  I'm sorry.

13       MR. MC CANN:  I think I followed you through

14   Mr. Warner.

15       THE COURT:  I may be adding this stuff up wrong.  In

16   fact, I think I am adding this stuff up wrong.  I need to

17   pause for a second.

18       (Brief interruption.)

19       THE COURT:  When you take account of the amount I

20   deducted from Mr. Warner, the amount awarded for him is 4,243.

21   When you take account of the amount that I deducted for Ms.

22   Bautista's time, the amount awarded for her is -- that is

23   where I botched it -- it's $285.  That was where I made the

24   math error.

25       So the total of attorney's fees is 4,528 hours.  The

1  costs are -- I don't really see any legitimate dispute about

2  those.  So the cost is $498.32.  So the plaintiff's motion for

3  attorney's fees and costs is granted in the reduced amount of

4  $5,026.32, and an order will be entered later today reflecting

5  that.

6         Okay, take care.

7         MR. MC CANN:  Judge, thanks for your time.  I

8  appreciate it.

9         MS. BAUTISTA:  Thank you, your Honor.

10  (Which were all the proceedings had in the above-entitled

11  cause on the day and date aforesaid.)

12                C E R T I F I C A T E

13

14     I hereby certify that the foregoing is a true and

15  correct transcript of the above-entitled matter.

16

17  _____        _____

18  Laura M. Brennan
   Official Court Reporter                    Date
   Northern District of Illinois

19

20

21

22

23

24

25

# APPENDIX 4

# Williams Montgomery & John Ltd.

*A Firm of Trial Lawyers*

**STATEMENT**

Attorneys At Law
20 North Wacker Drive
Suite 2100
Chicago, IL 60606
312-443-3200

Employer I.D. 36-2715906

Ms. Chandra Freeman
First American Holdings, LLC
2809 Wehrle Drive, Suite 1
Williamsville NY  14221

June 12, 2008

Invoice    151363

Our Matter  #   27827.00BUCH
Joffrey Benford v. Christopher M. Ranier

For Services Through May 31, 2008

| | |
|---|---:|
| Current Fees Due | $3,925.00 |
| Current Costs Due | $27.85 |
| Total Current Fees and Costs Due | $3,952.85 |

**TOTAL DUE AT THIS TIME**                                    **$3,952.85**

Payment is due upon receipt...Please return this page with your payment

# Williams Montgomery & John Ltd.
*A Firm of Trial Lawyers*

June 12, 2008
Invoice   151363

| | | | | |
|---|---|---|---|---|
| R.M. McCann | ASSOCIATE | 12.50 | 300.00 | $3,750.00 |
| T.F. Falkenberg | PARTNER | 1.50 | 175.00 | $175.00 |
| | TOTALS | 14.00 | | $3,925.00 |

Fees For Professional Services                          $3,925.00

### Reimbursable Costs

| | | |
|---|---|---|
| 04/28/08 | Legal research re: - MRM | 9.60 |
| 05/31/08 | Document Reproduction | 18.25 |
| | Total Reimbursable Costs | $27.85 |

Total current billing for this invoice                    $3,952.85

**PLEASE REMIT TOTAL BALANCE DUE**                    **$3,952.85**

# APPENDIX 5

## Affidavit of Michelle Weinberg

I, Michelle A. Weinberg, state under penalty of perjury that the following statements are true and correct:

1. I obtained my Juris Doctor degree from IIT-Chicago Kent College of Law in June of 1992. I have been a member of the bar of the Supreme Court of Illinois since November, 1992, and of the bar of the United States District Court for the Northern District of Illinois since December, 1992. I am currently a member of the Trial Bar of the Northern District of Illinois. I am also admitted to practice before the United States Courts of Appeal for the Seventh, Eighth, and Second Circuits.

2. I have been practicing exclusively in the area of consumer protection law since March, 1993. Between March 8, 1993, and September 1, 1997, I was employed by the law firm of Edelman & Combs, where I was responsible for all aspects of litigation in numerous consumer class action cases. Between September, 1997, and October 1, 1999, I was a solo practitioner, also specializing in consumer protection law. In October, 1999, I joined the law firm of Horwitz, Horwitz and Associates as an associate, brining my existing clients and cases with me. As of June 1, 2001, I was hired by the Legal Assistance Foundation of Metropolitan Chicago to start a new project serving the elderly with consumer problems. I am currently employed with the Legal Assistance Foundation as supervisor of the Chicago Seniors/Consumer Law Project.

3. I have handled numerous cases involving the Magnuson-Moss Warranty Act, the Fair Debt Collection Practices Act, the Illinois Consumer Fraud Act, the Truth in Lending Act, and other consumer protection statutes, including many home improvement and car-dealer fraud, collection harassment, and predatory lending cases.

4. My normal hourly billing rate, while in private practice, was $250 per hour (in 2001). This was the rate which I charged to hourly paying clients, and is comparable to or lower than the rates charged by other consumer litigation attorneys in Chicago with similar experience and expertise. My cases were primarily taken on a contingency basis with the stated hourly rate, and the contingent fee was typically the grater of my time spent at the regular hourly rate or one third of any recovery. I was generally able to obtain settlements or judgments for my clients' damages plus the amount of my full hourly fees because the cases were brought under consumer protection statutes that provided for the recovery of attorney's fees to the prevailing party.

5. That hourly rate was accepted by courts in approving class action settlements, for example, by the Honorable Ruben Castillo of the U.S. District Court for the Northern District of Illinois, who awarded me the rate of $200 in the case of McKenzie v. City of Chicago, No. 97 C 284, on June 15, 2000. The Honorable Matthew Kennelly of the U.S. District Court for the Northern District of Illinois awarded me the rate of $225 per hour in the case of Nichosan v. Equifax, 00 C 1611, on June 21, 2001. The Honorable Peter Flyyn of the Circuit Court of Cook County awarded me the following rates: $235 for the

1997-99 period, and $250 for the 1999-2001 period, in the case of <u>Singleton v. River Oaks Toyota, Inc.</u>, 96 L 12072, May 1, 2001.

6. As a legal services attorney with the Legal Assistance Foundation, I have not charged hourly fees since 2001. However, if I did charge attorney fees, my hourly rate today would be much higher than $250.

6. Based on the foregoing, and based on the increases in market rates in the Chicago area since the 1990s and early 2001, it is my opinion that the rate of $285.00 for Curtis Warner is reasonable, in light of his qualifications and experience. While Mr. Warner is a relatively recent graduate, he has a stellar, and, in fact, I have referred cases to him from the Legal Assistance Foundation because of his expertise, especially in cases involving the Fair Debt Collection Practices Act.

Executed September 4, 2008

_____
Michelle A. Weinberg

# APPENDIX 6

*Mitchem v. Northstar Location Services LLC*
09 C 6711 (N.D. Ill.).
Time Notes
For Curtis C. Warner

10/21/09     Office interview with James Mitchem
             (.9)

10/21/09     Research case law and net worth issues and Draft Complaint.
             (3.7)

10/21/09     e-mail to plt. w/ retainer and complaint for review.
             (.1)

10/21/09     e-mail from plt. w/ comments on complt.
             (.1)

10/22/09     Research and edit complaint to add unfair count f for name likeness.
             (.5)

10/23/09     e-mail of revised complt to plt. w/ comments
             (.1)

10/23/09     e-mail from plt. with signed retainer agreement and approval to file
             suit.
             (.1)

10/23/09     Civil Cover Sheet, Appearance, Summons
             (.1)

10/23/09     e-file complaint
             (.1)

10/23/09     e-mail to plt. w/ filed complaint.
             (.1)

10/30/09     Phone Call. Return call from Linda Liceing (Compliance Officer of
             North Star) 716-817-6770 ext. 6019.
             (.1)

10/30/09      Draft Notes of Conversation w/ Ms. Liceing.
             (.1)

10/30/09     e-mail to Plt. w/update and opinion position on settlement.
             (.1)

| 11/9/09 | Follow up phone call with Linda Liceing 716-817-6770 ext. 6019. Left voice message asking to be called back regarding any potential offer of settlement.<br>(.1) |
|---|---|
| 11/10/09 | e-mail from plt. w/ another non-complaint voice message left by Northstar.<br>(.1) |
| 11/10/09 | e-mail to plt. could be separate suit, but will hold off if settlement can be reached.<br>(.1) |
| 11/17/09 | Draft Motion for Default<br>(.3) |
| 11/21/09 | Research and Draft Motion for Leave to Take Limited Discovery.  New situation of having a defendant default on a class case.<br>(3.2) |
| 11/23/09 | E-file Motion / Draft proposed order / e-mail clerk<br>(.2) (Admin) |
| 11/23/09 | Phone message from Ms. Liceing and returned her call.<br>(.4) |
| 11/24/09 | Office meeting w/ JM regarding comments of Ms. Liceing and disc. On how he wanted to pursue the matter as class.<br>(.3) |
| 11/25/09 | Review Def. Mtn. to Vacate<br>(.3) |
| 11/25-30 | Research and draft response to motion to vacate.<br>(8.5) |
| 12/1/09 | Review Dkt. 16 filing of CT Corp sheet.<br>(.1) |
| 12/1/09 | Phone call to Jennifer Weller ("JW") re: Def. Aff. Stating that it wants to look into class settlement possibilities.<br>(.2) |
| 12/3/09 | settlement negotiation e-mails w/ JW<br>(.2) |

| | |
|---|---|
| 12/4/09 | Court Appearance<br>(.8) |
| 1/7/10 | Start review of proposed settlement agreement<br>(.1) |
| 1/8/10 | Cont. review and edits of proposed settlement agreement.<br>(.1) |
| 1/9/10 | Review and complete first set of edits to proposed settlement agreement.<br>(.8) |
| 1/15/10 | e-mail from JW re; changes to SA.<br>(.1) |
| 1/18/10 | e-mail to JW with changes to SA.<br>(.1) |
| 1/22/10 | Review of proposed joint motion for class settlement<br>(.1) |
| 1/22/10 | Review of other settlement documents and comments.<br>(.2) |
| 1/29/10 | Review of Def. CAFA letter.<br>(.1) |
| 2/1/10 | Review of finalized Joint Motion for Class Settlement<br>(.1) |
| 2/15/10 | e-mail from JW that class notice has gone out.<br>(.1) |
| 2/19/10 | e-mail from JW of proof of mailing<br>(.1) |
| 3/9/10 | Class member phone call<br>(.1) |
| 4/6/10 | e-mail from JW asking if any objections opt outs were received.<br>(.1) |
| 4/7/10 | response e-mail to JW<br>(.1) |

| 4/7/10 | e-mail to JW for class numbers (.1) |
| 4/7/10 | response by JW (.1) |
| 4/7/10 | Response of Class numbers from First Class (.1) |
| 4/30/10 | Draft Final Approval Memo (1.5) |

**Total Hours = 24.8 Hours**
**@ 305 per hour**
**$7,564 = Attorney's fees.**

## Costs

**$350 – Filing Fee**
**$30 – Service of Process**

**$380 Total Costs**